IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Al Raha Group for Technical Services, a Saudi Arabian corporation<br><br>Petitioner<br><br>v.<br><br>PKL Services, Inc., a California corporation<br><br>Respondent | Civil Action No.<br><br>_____ |

## PETITION TO CONFIRM ARBITRATION AWARD AND MOTION FOR EXPEDITED PROCEDURES

Petitioner Al Raha Group for Technical Services ("Petitioner" or "RGTS") petitions the Court for an Order and Judgment confirming the Interim Emergency Award issued by the emergency arbitrator on August 27, 2018 in the arbitration matter of *Al Raha Group for Technical Services v. PKL Services, Inc.*, AAA No. 01-18-0003-0632 (the "Emergency Award") which granted Petitioner's request for an emergency preliminary injunction enjoining PKL Services, Inc. ("Petitioner" or "PKL") from proceeding with termination of RGTS' subcontract with PKL and from replacing RGTS with another subcontractor pending constitution of the full

1

three-person arbitral tribunal. A true and correct copy of the Emergency Award is attached as **Exhibit A** hereto.

Given the urgent nature of the injunctive relief provided for in the Emergency Award and PKL's continuing refusal to abide by the injunction which will deny RGTS any meaningful remedy in the ongoing arbitration proceedings, RGTS respectfully moves for expedited procedures pursuant to Local Rule 65.2.

In support of this petition and motion, RGTS respectfully shows the Court as follows:

## PARTIES, JURISDICTION AND VENUE

1. RGTS is a corporation organized and existing under the laws of the Kingdom of Saudi Arabia with its principal place of business in Riyadh, Saudi Arabia.

2. PKL is a California corporation with its principal place of business in Poway, California.

3. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") shall be enforced in the United States courts. 9 U.S.C. § 201. "The purpose of the New York Convention, and of the United States' accession to the convention, is to 'encourage the recognition and enforcement of international arbitral awards' to 'relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that [is]

speedier and less costly than litigation.'" *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH,* 141 F.3d 1434, 1440 (11th Cir. 1998) (citations omitted.)

4. All arbitral awards arising out of commercial relationships fall under the New York Convention, except for those awards that "aris[e] out of . . . a [commercial] relationship which is entirely between citizens of the United States . . ." 9 U.S.C. § 202; *Industrial Risk Insurers,* 141 F.3d at 1440-41. Because the Emergency Award in this case arose out of a commercial relationship between RGTS, a citizen of the Kingdom of Saudi Arabia, and PKL, a citizen of the United States, the New York Convention governs it. 9 U.S.C. § 202; *Industrial Risk Insurers,* 141 F.3d at 1441.

5. While the Eleventh Circuit has apparently not yet definitively addressed whether federal district courts have jurisdiction over actions to confirm or vacate an arbitration award granting temporary injunctive relief other circuits have addressed this question and concluded that district courts have jurisdiction. *See, e.g., Arrowhead Global Sols., Inc. v. Datapath, Inc.,* 166 Fed.Appx. 39 (6th Cir. 2006); *Ace/Cleardefense, Inc. v. Clear Def., Inc.,* 47 Fed.Appx. 582 (D.C. Cir. 2002); *Yasuda Fire & Marine Ins. Co. of Europe, Ltd., v. Cont'l Cas. Co.,* 37 F.3d 345, 348 (7th Cir. 1994); *Pac. Reinsurance v. Ohio Reinsurance,* 935 F.2d 1019, 1023 (9th Cir. 1991). *See also Air Center Helicopters, Inc. v. Starlite Investments*

*Ireland, Limited,* No. 4:18-cv-00599-O, 2018 WL 3970478 (N.D.Tex. Aug. 15, 2018). Those circuits agree that where an interim award, as here, is in the nature of a preliminary injunction, a district court's determination whether to confirm or vacate the award is permissible to "make final relief meaningful." *Ace/Cleardefense,* 47 Fed.Appx. at 582.

6. The Emergency Award at issue here is the final determination of the emergency arbitrator appointed to resolve RGTS' application for an emergency preliminary injunction. The propriety of the preliminary injunctive relief granted in the Emergency Award presents exactly the type of discrete, time-sensitive issue over which this Court should exercise jurisdiction to confirm the arbitration award. Without immediate enforcement of the injunctive relief to prevent PKL from violating the injunction and proceeding with replacement of RGTS with another subcontractor, RGTS will be denied any meaningful remedy in the ongoing arbitration proceedings.

7. Pursuant to 9 U.S.C. § 203, this Court has jurisdiction over the subject matter of this action to confirm the Emergency Award granting RGTS preliminary injunctive relief against PKL. *Industrial Risk Insurers,* 141 F.3d at 1440 (holding that Section 203 gives original jurisdiction to the district courts of the United States over any action or proceeding falling under the Convention regardless of the amount in controversy).

8.  Venue is proper in this Court and in this district pursuant to 9 U.S.C. § 204 since the place designated in the agreement between RGTS and PKL as the place of arbitration is DeKalb County, Georgia. The Emergency Award, which is attached hereto as **Exhibit A**, states that "for purposes of Article I of the New York Convention of 1958 on the Recognition and Enforcement of Foreign Arbitral Awards, this Interim Award was made in DeKalb County, Georgia, United States of America."

## THE ARBITRATION PROCEEDINGS AND EMERGENCY AWARD

9.  Effective as of October 25, 2016, RGTS and PKL entered into a subcontract identified as Subcontract No. RGTS-16-R-0007 (the "Subcontract") pursuant to which RGTS agreed to perform certain services and provide certain equipment in the Kingdom of Saudi Arabia in support of PKL's federal prime contract. PKL's federal prime contract provides for training in the Kingdom of Saudi Arabia of Royal Saudi Air Force ("RSAF") personnel on proper aircraft maintenance and training to support the RSAF's F-15 Fleet Modernization Program. A true and correct copy of the Subcontract is included as Attachment A to RGTS' Statement of Claim and Requests for Relief filed with the American Arbitration Association on August 13, 2018 and attached hereto as **Exhibit B**.

10. Pursuant to Section 15.2 of the Teaming Agreement included as an exhibit to the Subcontract and made a part of the Subcontract, RGTS and PKL

agreed to settle "any controversy, dispute, or claim of whatever nature arising out of, in connection with, or in relation to the interpretation, performance or breach of" the Subcontract by "final and binding arbitration conducted in DeKalb County, Georgia" to be administered by a panel of three arbitrators and to be conducted in accordance with the then-existing rules of the American Arbitration Association ("AAA"). Section 15.2 also states that RGTS and PKL agreed that "any award rendered by the arbitrators may be entered by any state or federal court having jurisdiction. . ."

11. A dispute arose between RGTS and PKL based on PKL's attempt to terminate the Subcontract effective as of August 31, 2018 and replace RGTS with another subcontractor. On August 13, 2018, RGTS filed a Demand for Arbitration and Statement of Claim and Requests for Relief (**Exhibit B** attached hereto) with the AAA thereby commencing arbitration proceedings before that body governed by the AAA's International Dispute Resolution Procedures. RGTS' Demand for Arbitration and Statement of Claim and Requests for Relief seeks (a) an order compelling binding arbitration; (b) declaratory judgment declaring PKL's action attempting to terminate the Subcontract constitutes an anticipatory breach of contract; and (c) preliminary and permanent injunctive relief enjoining PKL from proceeding with termination and replacing RGTS with another subcontractor.

12. The AAA rules themselves determine which of the AAA rules apply. Here, the binding arbitration provision states that this dispute shall be conducted under the then existing rules of AAA without designating which AAA rules. This dispute is an international dispute since it a dispute between a Saudi Arabian corporation and a California corporation. Article 1(1) of the AAA's International Dispute Resolution Procedures states that where the parties "have provided for arbitration of an international dispute by . . . the American Arbitration Association without designating particular rules, the arbitration shall take place in accordance with these Rules [the International Dispute Resolution Procedures] as in effect at the date of commencement of the arbitration. . . " Therefore, the AAA's International Dispute Resolution Procedures govern the arbitration proceedings.

13. Simultaneous with the filing of its demand for arbitration, RGTS also filed an Application for Emergency Injunctive Relief pursuant to Article 6 "Emergency Measures of Protection" of the AAA's International Dispute Resolution Procedures. RGTS sought appointment of a single emergency arbitrator to grant emergency injunctive relief to enjoin PKL from proceeding with termination of the Subcontract on August 31, 2018 and replacing RGTS with another subcontractor prior to appointment of the three-person arbitral panel. A true and correct copy of RGTS' Application for Emergency Injunctive Relief is attached hereto as **Exhibit C**.

14. On August 15, 2018, RGTS filed with the AAA an unopposed Amendment and Supplement to its Statement of Claim and Requests for Relief asserting that the term of the Subcontract does not expire on its own on August 31, 2018 but is coterminous with the term of PKL's Prime Contract. A true and correct copy of RGTS' Amendment and Supplement to its Statement of Claim and Requests for Relief is attached hereto as **Exhibit D.**

15. In response to RGTS' application for emergency injunctive relief and in accordance with Article 6 of the AAA's International Dispute Resolution Procedures, a single emergency arbitrator was appointed to resolve RGTS' request.

16. The emergency arbitrator established a briefing schedule for submission of initial and reply briefs by RGTS and PKL. After submission of the initial and reply briefs by RGTS and PKL, the emergency arbitrator issued the Emergency Award on August 27, 2018 granting RGTS' requested injunctive relief and enjoining PKL from terminating the Subcontract on August 31, 2018 in order to retain the status quo until the full arbitral panel is constituted. The Emergency Award required RGTS to secure an injunction bond in the amount of $500,000 before the injunctive relief would become effective. On August 31, 2018, RGTS obtained the required injunction bond in the amount of $500,000 and filed a copy with the AAA and PKL. A true and correct copy of the $500,000 Injunction Bond is attached hereto as **Exhibit E.**

17. In a letter dated August 27, 2018 and sent to RGTS that same day, PKL instructed RGTS to ensure that RGTS proceed with transition to the replacement subcontractor (Dalma Tech$^2$) including release of all of RGTS' Saudi employees and transfer of all such employees to Dalma Tech$^2$ in the Saudi Ministry of Labor system. A true and correct copy of PKL's August 27, 2018 letter to RGTS is attached hereto as **Exhibit F.**

18. By letter dated August 28, 2018, RGTS responded to PKL's August 27, 2018 letter and stated that RGTS will not proceed with any transition to another subcontractor and stands ready to perform all services under the Subcontract and requires that PKL comply with the terms of the Subcontract. RGTS also stated that the emergency injunction granted by the AAA emergency arbitrator enjoins PKL from proceeding with any actions to replace RGTS as a subcontractor and that RGTS is in the process of posting the security bond in the amount of $500,000 and will have that bond in place very shortly. RGTS further stated that PKL is required to allow RGTS to continue performance and to extend RGTS' performance beyond August 31, 2018 until the time that the full arbitral panel has been constituted and has addressed the issue of the injunction. RGTS added that PKL is required to pay all invoices from RGTS in a timely manner consistent with the terms of the Subcontract and that this includes payment of funds by PKL to RGTS for employee pay for the month of August and for periods of performance after August

31, 2018. RGTS concluded its letter stating that based on the injunction, RGTS will continue to utilize its lower-tier subcontractor, Al Masarat, for any periods of performance after August 31, 2018. A true and correct copy of RGTS' letter dated August 28, 2018 is attached hereto as **Exhibit G.**

19. On August 28, 2018, PKL filed with the emergency arbitrator a motion to vacate or modify the Emergency Award. Among other things, PKL argued that the injunction should be vacated because of so-called newly-discovered evidence indicating that RGTS was not capable of continuing performance of the Subcontract after August 31, 2018 because RGTS had not extended a crucial lower-tier subcontract with Al Masarat and that Al Masarat had no interest in extending the lower-tier subcontract.

20. On August 29, 2018, RGTS filed a reply and stated among other things that RGTS would continue to utilize its lower-tier subcontractor, Al Masarat, for performance of the Subcontract after August 31, 2018. As an exhibit to its August 29, 2018 filing RGTS included a copy of RGTS' August 28, 2018 letter to PKL (**Exhibit G** attached hereto).

21. On August 30, 2018, the emergency arbitrator ordered RGTS to provide a sworn declaration to address PKL's allegation that RGTS could not perform the Subcontract beyond August 31, 2018 because RGTS had allegedly

terminated its lower-tier subcontract with Al Masarat as of August 31, 2018 and Al Masarat had no interest in extending that subcontract beyond August 31, 2018.

22. On August 31, 2018, RGTS submitted its further reply and the sworn declaration from the Chief Financial Officer of RGTS stating that, based on the injunction granted by the emergency arbitrator which had been made effective by issuance of the injunction bond on August 31, 2018, RGTS had obtained agreement from its lower-tier subcontractor, Al Masarat, to continue its performance beyond August 31, 2018. As part of the sworn declaration, RGTS included a copy of the agreement signed by RGTS and Al Masarat to allow for Al Masarat to continue its performance beyond August 31, 2018. A true and correct copy of the August 31, 2018 sworn declaration from RGTS' Chief Financial Officer (Khaldoun Abu Abed) is attached hereto as **Exhibit H.**

23. In the August 31, 2018 sworn declaration (**Exhibit H** attached hereto), RGTS' Chief Financial Officer further stated that in addition to incurring expenses and liabilities with Al Masarat to continue performance beyond August 31, 2018, RGTS was incurring many other expenses and liabilities to allow for its continued performance beyond August 31, 2018 as allowed by the preliminary injunction. RGTS stated that in order to provide the required housing of ex-patriate employees beginning on September 1, 2018, RGTS was required to execute a lease for the

housing for the full 12-month period covering September 1, 2018 through August 31, 2019.

24. RGTS' Chief Financial Officer also stated in his August 31, 2018 sworn declaration (**Exhibit H** attached hereto) that in order to be able to continue to perform beyond August 31, 2018, RGTS was extending the employment contracts for the relevant employees beyond August 31, 2018 and that RGTS would be obligated to continue their employment and pay their salaries for the period of such extension.

25. Later that same day on August 31, 2018, the emergency arbitrator denied PKL's motion to vacate or modify the Emergency Award.

26. By e-mail dated September 3, 2018 from PKL to RGTS, PKL notified RGTS that it was still proceeding with replacement of RGTS with another subcontractor. PKL's actions are contrary to the preliminary injunction granted in the Emergency Award. A true and correct copy of PKL's September 3, 2018 e-mail to RGTS is attached hereto as **Exhibit I.**

## CONFIRMATION OF EMERGENCY AWARD

27. This Court shall confirm the Emergency Award unless it finds the existence of one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the New York Convention. 9 U.S.C. § 207. *See also Industrial Risk Insurers,* 141 F.3d at 1441 (holding that an international

arbitration award must be confirmed unless a party challenging the award can successfully assert one of the seven defenses against enforcement of an award enunciated in Article V of the New York Convention).

28. Review of arbitral awards under the New York Convention is "very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Encyclopedia Universalis S.A v. Encyclopedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005). The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies. The burden is a heavy one, as the "showing required to avoid summary affirmance is high". *Id.* Under the New York Convention, the district court's role is limited, and it must confirm the award unless one of the grounds for refusal specified in the Convention applies to the underlying award. *Admart AG v. Stephen and Mary Birch Found, Inc.*, 457 F.3d 302, 307 (3d Cir. 2006).

29. The Eleventh Circuit has explicitly held that no defense against the enforcement of an international arbitral award is available on any grounds not specified by the New York Convention. *Industrial Risk Insurers,* 141 F.3d at 1443.

30. Article V of the New York Convention provides as follows:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a) The parties to the agreement. . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Article V, June 10, 1958. *See also Industrial Risk Insurers,* 141 F.3d at 1441 (Footnote 8 where the Court sets out Article V in full text). To carry out the policy

favoring enforcement of foreign arbitral awards, courts have strictly applied the Article V defenses and generally view them narrowly. *See Admart AG,* 457 F.3d at 308.

31. Here, none of the defenses against enforcement of an award specified in Article V of the New York Convention applies to the Emergency Award.

32. Additionally, under the AAA International Dispute Resolution Procedures, the Emergency Award is "binding on the parties when rendered" and the parties are obligated to comply with the Emergency Award "without delay". Article 6(4). In addition, the parties are required to carry out any award "without delay and, absent agreement otherwise, waive irrevocably their right to any form of appeal, review, or recourse to any court or other judicial authority, insofar as such waiver can validly be made." Article 30(1).

33. Accordingly, the parties knowingly agreed to submit their dispute to binding arbitration under the AAA's International Dispute Resolution Procedures, to carry out any resulting awards without delay, and to waive any recourse they might otherwise have against enforcement of the award. PKL cannot now challenge the Emergency Award and otherwise fail to comply with it when it has validly waived any right to do so and none of the defenses against enforcement of the Emergency Award specified in Article V of the New York Convention are present.

WHEREFORE, pursuant to 9 U.S.C. § 207, RGTS respectfully seeks expedited consideration of this Petition and the entry of an order confirming the Emergency Award and directing PKL to comply with the injunction and cease any and all actions to terminate the Subcontract and replace RGTS with another subcontractor.

Respectfully submitted this 4th day of September, 2018.

/s/ Samuel S. Woodhouse
Samuel S. Woodhouse, Esquire
Georgia State Bar No. 755070

THE WOODHOUSE LAW FIRM, LLC
260 Peachtree Street NW
Suite 1402
Atlanta, GA 30303
T: 404-214-7200
F: 404-214-7202
swoodhouse@woodhouselawfirm.com

*Counsel for Plaintiff*

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14 point Times New Roman font in accordance with Local Rule 5.1(C).

Dated: September 4th, 2018

/s/ Samuel S. Woodhouse
Samuel S. Woodhouse, Esquire
Georgia State Bar No. 755070

**THE WOODHOUSE LAW FIRM, LLC**
260 Peachtree Street NW
Suite 1402
Atlanta, GA 30303
T: 404-214-7200
F: 404-214-7202
swoodhouse@woodhouselawfirm.com

*Counsel for Plaintiff*